UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

REBECCA SIDELL, )
)
Plaintiff, )
)
vs. ) 1:08-cv-1699-SEB-DML
)
RESIDENTIAL CRF, INC. and, CRF )
FIRST CHOICE, INC., )
)
Defendants. )

**ENTRY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendants' Motion for Summary Judgment (Docket No. 39), filed on March 22, 2010, pursuant to Federal Rule of Civil Procedure 56. Plaintiff, Rebecca Sidell, brings her claim against Defendants, CRF First Choice, Inc. ("First Choice") and Residential CRF, Inc.,[1] alleging that she was employed by Defendants and that, during her employment, she was not paid overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.[2] For the reasons detailed in this entry, we GRANT Defendants' Motion for Summary Judgment.

---

[1] In her responsive briefing on this motion, Ms. Sidell concedes that Residential CRF, Inc. should be dismissed. Accordingly, we GRANT Defendants' Motion for Summary Judgment as to Defendant Residential CRF, Inc.

[2] Ms. Sidell brought additional claims under the Indiana Wage Payment and Wage Claims Statutes. Ms. Sidell states that these claims should be dismissed in her responsive briefing on the motion. Accordingly, we GRANT Defendants' Motion for Summary Judgment as to Hill's Indiana Wage Payment and Wage Claims Statute claims.

## Factual Background[3]

In October 2001, Ms. Sidell began her employment with First Choice as a Direct Care staff member, (Sidell Interrog. at ¶ 3), and continued her employment in that capacity for the next seven years, until her termination in November 2007. (Def. Br. at 7-8). First Choice provides residential care and companionship services to the mentally challenged and developmentally disabled population (referred to as "consumers") within the consumers' homes. (Def. Br. at 2).

Ms. Sidell's job responsibilities with First Choice included supervising the consumers, assisting consumers with anything pertaining to their daily living activities, transporting consumers back and forth to their workshop or community jobs, overseeing the consumers' responsibilities, maintaining the homes in which the consumers live, performing household chores, changing bedding, and doing laundry. (Def. Br. at 6). Ms. Sidell worked in five different locations during the course of her employment with First Choice.[4] (Sidell Interrog. at ¶ 3). Throughout Ms. Sidell's employment with First Choice her job responsibilities remained substantially the same. (Def. Br. at 6).

---

[3] Ms. Sidell states she does not dispute any of Defendants' material facts contained in its brief in support of summary judgment. (Pl. Br. at 1). Additionally, Ms. Sidell does not point to any additional facts that are in dispute.

[4] Ms. Sidell began her employment with First Choice at its Muncie 2 location, working there from October 2001 to August 2003. She was then transferred to Peru House, working there from August 2003 to January 2005. Next, she was transferred to Greenfield 2, working there January 2005 to about June 2005. After returning from medical leave, she began working at New Castle Condo in October 2005. Finally, she was transferred to the Muncie 1 location, working there from July 2007 until her termination in November 2007. (Def. Br. at 7-8).

Ms. Sidell worked a twenty-four hour day, seven-day week a schedule ("24/7 schedule") throughout her employment with First Choice. (*Id.* at 5). She would work one week and have the next week off. (*Id.*). Throughout the work week, First Choice required Ms. Sidell to spend the nights with First Choice consumers and did not allow Ms. Sidell to leave even if a night-staff person was on duty. (*Id.* at 6). Ms. Sidell slept from 10:00 p.m. to 6 a.m., an eight hour period, within the facility. First Choice did not compensate for her sleep periods, as long as she was asleep. (*Id.*). However, First Choice did compensate Ms. Sidell for any time spent awake and caring for a consumer. (*Id.*). She received overtime pay for such stints. (*Id.*). If Ms. Sidell was awakened during sleep time due to a consumer, but did not have to perform any duties, she recorded a half-hour of overtime pay. (*Id.*).

First Choice's payroll policy requires that each First Choice employee complete his or her own time sheet per pay period and return it to the First Choice office. (*Id.* at 8). In accordance with this policy, Ms. Sidell recorded her time on her Employee Time Record by handwriting in her own time entries. (*Id.*). When she worked her normal schedule of hours (16 hours a day), she recorded 112 hours per pay period (24 hours a day, minus 8 hours sleep time per day, for 7 days). (*Id.*). On occasion, Ms. Sidell recorded additional hours, such as when a consumer woke her during sleep time. (*Id.* at 9).

In their depositions and affidavits, Ms. Sidell's supervisors, Barbara Schiffli, Kathy Tomlin, and Rachael Butcher, testified regarding the amount of time Ms. Sidell

spent on various household tasks during the course of her employment with First Choice. Ms. Schiffli, who was Ms. Sidell's supervisor from 2001 to 2003, testified that the time spent doing general household work at a First Choice location was less than 20% of the total weekly hours, a figure Ms. Sidell admits in her responsive brief. (Schiffli Dep. at 9).

Ms. Tomlin, who was Ms. Sidell's supervisor from 2003 to 2006, testified as follows:

> Q: Now, during the time that you were Supervisor for Rebecca Sidell in the Peru home, do you have any estimate as to how much of their time on a percentage basis would have been spent **doing essentially household work for the house: cleaning, cooking, making beds**, doing yard work, if necessary?
>
> . . . .
>
> A: 40 to 50 percent….

(Tomlin Dep at 20-21 (emphasis added)). Additionally, Ms. Tomlin asserted that, excluding meal preparation, washing clothes, bed making, and other household work relating to the direct care of First Choice's consumers, the percentage of time Plaintiff spent performing general household work unrelated to the care of the consumers was no more than an hour to an hour and a half during an 8-hour shift. (Tomlin Aff. at ¶ 6).

Finally, Ms. Butcher, Ms. Sidell's supervisor from May 2006 to November 2007, testified as follows:

> Q: Based upon your knowledge of Rebecca's obligations and duties at the New Castle condo, what percentage of her time would have been engaged in [making beds, washing clothes, and household

4

work]?

A: **45 percent of the time for household activities**.

Q: Okay. And is it your belief that that percentage would have remained relatively during the entire time that she was—

A: Yes.

Q: --employed at the New Castle condo?

. . . .

Q: At the Muncie home, did **Rebecca's duties to household tasks, such as meal preparation, bed making, washing of clothes, would that also have been 45 percent of her time spent**?

A: Yes.

. . . .

Q: Her job duties at the Greenfield home, how much would you estimate the **time that she would spend doing the household work that we talked about before: meal preparation, bed making, clothes washing, other household work**?

A: . . . Maybe 35 percent.

(Butcher Dep. at 13-15, 20 (emphasis added)).

Ms. Sidell brought this lawsuit following her termination of employment by First Choice alleging that she was entitled to receive but was not paid time and a half for the hours she worked that exceeded forty per week, pursuant to the FLSA.

## Legal Analysis

**I.     Standard of Review**

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.* at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence

to support the non-moving party's case. *Id.* at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1992). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999); *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993).

**II. Discussion**

Ms. Sidell claims that "Defendants failed to pay Plaintiffs [sic] overtime wages at a rate of one and one half times the normal hourly pay rate, for hours worked in excess of

forty (40) hours per week." (Pl. Compl. at ¶ 10). The FLSA requires employers to pay domestic service employees overtime pay at the rate of one and one-half times the regular wage for hours worked in excess of forty in any single work week. 29 U.S.C. § 207(a)(1).[5]

### A. Companionship Exemption

First Choice first contends that the overtime provisions of 29 U.S.C. §207 do not apply to Ms. Sidell because she falls with the "Companionship Services exemption" of the FLSA. That exemption provides in pertinent part:

> The provisions of [section] . . . 207 [overtime requirements] shall not apply with respect to. . . .
> (15) . . . any employee employed in domestic services employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary [of Labor]) . . .

29 U.S.C. §213 (a)(15); *see also Cox v. Acme Health Servs., Inc.*, 55 F.3d 1304, 1309 (7th Cir. 1995). "Companionship services" are defined by DOL regulations as:

> Those services which provide fellowship, care, and protection for a person who because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include **household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: provided however,**

---

[5] Section 7(a)(1) of the FLSA provides that: "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

8

> that such work is incidental, i.e., does not exceed 20% of the
> total weekly hours worked . . . .

29 C.F.R. § 552.6 (1994) (emphasis added).

Based on the plain language of the regulation, a companion can provide unlimited services that provide fellowship, care, or protection for a consumer and still be exempt from the FLSA's overtime requirements. Household work related to the care of the consumer includes meal preparation, bed making, washing of clothes, and other similar services. However, the regulation limits a companion's performance of general, incidental household work to 20% of the total weekly hours worked. *See Threatt v. CRF First Choice, Inc.*, 2005 WL 4631399, at *4 (N.D. Ind. July 21, 2006). Any work unrelated to the care of a consumer, such as yard work or routine cleaning of the locations, would be limited to 20% of the total weekly hours. *See McCune v. Or. Senior Servs. Div.*, 894 F.2d 1107, 1109-1110 (9th Cir. 1990).

Ms. Sidell does not dispute that she was employed to provide companionship services to the aged or infirm. Rather, she argues that she spent more than twenty percent of her total weekly hours performing general, incidental household chores, and, therefore, the companionship exemption does not apply. (Pl. Br. at 3). To support her argument, Ms. Sidell relies on the deposition testimony of Ms. Butcher and Ms. Tomlin. (*Id.*). However, both supervisors' depositions as excerpted above only highlight that Ms. Sidell was engaged in routine companionship services for a substantial portion of her week and not in general, incidental housework. In their depositions, Ms. Butcher and Ms. Tomlin

responded to questions relating only to companionship services–activities which are *not* subject to the twenty percent limitation. Neither gave percentages of the amount of time spent on general, incidental housework–activities subject to the twenty percent limitation in their depositions.

Though there is no evidence affirmatively demonstrating Ms. Sidell performed *more* than twenty percent of general, incidental housework, there is evidence in the record demonstrating that Ms. Sidell performed *less* than twenty percent of general, incidental housework. First, Ms. Tomlin testified in her affidavit that, when excluding meal preparation, washing clothes, bed making, and other household work relating to the direct care of First Choice's consumers, the percentage of time Plaintiff spent performing general household work unrelated to the care of the consumers was no more than an hour to an hour and a half during an 8-hour shift, which is clearly less than twenty percent. (Tomlin Aff. at ¶ 6). Secondly, the deposition of Ms. Schiffli testified in her deposition that the time spent doing household work at a First Choice location was less than 20% of the total weekly hours.[6] (Schiffli Dep. at 9).

Because there is no evidence contradicting Ms. Tomlin's affidavit and Ms. Schiffli's deposition testimony establishing that Ms. Sidell spent less than twenty percent of her week on general, incidental household work, First Choice has satisfied its burden

---

[6] We note that Ms. Schiffli was only a supervisor of Ms. Sidell prior to 2003. However, because Ms. Sidell was a Direct Care Staff 24/7 employee throughout the entire course of her employment and because it is undisputed that her job duties were substantially the same regardless of her specific location, Ms. Schiffli's testimony is still persuasive.

of showing that there is no genuine issue of material fact. Thus, we find that the Companionship Services Exemption operates to bar Ms. Sidell's claim for overtime pay under the FLSA.

### B. Sleep Time Exemption

Although it is not entirely clear from Ms. Sidell's complaint whether she is also raising a 29 U.S.C. § 206 claim regarding compensation for her time spent sleeping during her shifts, the parties addressed this claim in their briefs, so we follow their lead. First Choice contends that Ms. Sidell is not entitled to any compensation whatsoever for "sleep time," because the sleep time exception, 29 C.F.R. § 785.22(a), applies. According to First Choice policy, employees are not compensated for sleep time, a designated eight hour period of the twenty-four hour day, unless they are awakened during the eight hour period by a consumer who needs their care. (Def. Br. at 8-9). In such circumstances, First Choice companions are paid for the time they are awake during their otherwise sleep time. (*Id.*).

> The sleep-time exception regulation provides in relevant part as follows:
>
> Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked.

11

29 C.F.R. § 785.22(a) (citations omitted). Thus, the sleep-time regulation provides that, in the absence of an express or implied agreement by the employee that sleep time may be deducted, sleep time must be counted as compensable time. 29 C.F.R. § 785.22. In other words, the default position is that employees have a right to be paid for sleep time where the employer requires them to be on duty. *See Cunningham v. Gibson County*, 1997 WL 123750, at *3 (6th Cir. March 18, 1997); *Buttry v. Board of Comm'rs of Posey County*, 2005 WL 2127383, at *7 (S.D. Ind. 2005). The Defendant bears the burden of establishing that an exception exists to the general provisions of the FLSA. *Johnson v. City of Columbia*, 949 F.2d 127, 130 (4th Cir. 1991).

The parties in this case agree that no explicit agreement exists that sleep time may be deducted but they dispute whether an implicit agreement exists. First Choice contends that, according to the implicit agreement, Ms. Sidell was to "be paid for sixteen (16) hours per twenty-four (24) hour period worked, and that eight (8) hours in a given work day would be deducted." (Def. Reply Br. at 10). First Choice also agreed to pay overtime to Ms. Sidell for the time she was awake during sleep time to care for a Consumer.

Under the FLSA and applicable regulations, an implied agreement to deduct sleep time from employee's compensation clearly exists if an affected employee does not assert any verbal or written protest to the arrangement within a reasonable period of time of

adoption of the policy or employee being hired under the policy. *See Bodie v. City of Columbia, S.C.*, 934 F.2d 561, 566-68 (4th Cir. 1991); *see also* 29 C.F.R. § 785.22(a). If an employee protests the policy but continues her employment subsequent to its adoption, her continued employment is evidence–but not necessarily conclusive–of her implied consent to its terms, and, in such cases, it is appropriate for the court to examine the specific facts of the case.

Here, it is undisputed that never once did Ms. Sidell object to First Choice's deduction of sleep time from her compensation during the course of her seven-year employment. Further, it is undisputed that Ms. Sidell continued to work and accept pay, implicitly agreeing to the sleep time policy. In fact, Ms. Sidell personally accounted for the time she worked by handwriting her own time on her time sheets. Ms. Sidell did not typically write down any time she worked for the time period between 10:00 p.m. and 6:00 a.m., as long as she was not awakened during this period by the consumer.

The undisputed facts in this case reveal an agreement between First Choice and Ms. Sidell that is readily implied from the course of conduct of the parties. Ms. Sidell's continued employment and acceptance of paychecks at First Choice for the entirety of her seven years of employment without any objection is sufficient to establish an implied agreement that the eight-hour regularly scheduled sleep time was to be excluded from hours worked. Therefore, Ms. Sidell is unable to establish that First Choice violated the FLSA by relying on the absence of an explicit agreement regarding overtime compensation.

Once an implicit agreement is found to exist, in order for the exception for compensation for sleep time to apply, there must be evidence that adequate sleeping facilities were furnished by the employer. The parties dispute whether Ms. Sidell was ever furnished with adequate sleeping facilities. Adequate sleeping facilities is not defined by the regulations. However, courts have found that, "if the facts are undisputed that the plaintiff, [herself], actually found the facilities provided to be adequate, then summary judgment is appropriate." *Trocheck v. Pellin Emergency Med. Serv., Inc.*, 61 F. Supp.2d 685, 695 (N.D. Ohio 1999). Further, in the context of this specific case, we find the most telling indicator of whether the sleeping facilities were adequate is that Ms. Sidell never indicated in any way that they were not. At least one court has found dispositive the fact that the plaintiff "never complained about the adequacy of his sleeping facilities . . . the first time he asserted inadequacy was in this lawsuit." *Id.* at 695. Here, Ms. Sidell's failure to complain during the course of her employment supports our finding of adequacy.

The only evidence relevant to whether adequate sleeping facilities were furnished favors First Choice and does not create a genuine issue of material fact.[7] In her affidavit,

---

[7] The sole piece of evidence Ms. Sidell cites in support of her argument is her own deposition testimony that she would sometimes sleep on a couch at the Munice II location. (Sidell Dep. at 41). However, whether or not Ms. Sidell ever slept on a couch is irrelevant for the purposes of this motion because, as First Choice notes, the dates Ms. Sidell worked at the Muncie II location from 2001 through July 2003 clearly fall outside the statutes of limitations associated with this case. *See* 29 U.S.C. § 255(a) (stating a two-year statute of limitation applies to an action for unpaid wages under the FLSA, except where an employer acts willfully and then a three-year limitations period applies).

Kathy Tomlin states that "[b]oth Muncie I New Castle Condo had a separate staff room where 24/7 employees could sleep. The staff room was separate from the consumers and provided a private space for staff to sleep." (Tomlin Aff. ¶ 3). Based on the evidence demonstrating that during the relevant time period Ms. Sidell was provided a private space for sleep and because Ms. Sidell never disputed the reasonableness or adequacy of the sleeping arrangements, a reasonable finder of fact could only conclude that the sleeping accommodations provided to Ms. Sidell were in fact adequate.

Because we find that an implicit agreement existed between First Choice and Ms. Sidell to exclude sleep time from her salary computations and that adequate sleeping facilities were provided, we hold that the sleep-time exception applies, further barring Ms. Sidell's claims for any payment during the sleep time period.[8]

## Conclusion

For the reasons detailed above, First Choice's Motion for Summary Judgment is GRANTED in its entirety, and final judgment shall enter accordingly.

IT IS SO ORDERED.

Date: _____11/12/2010_____  

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[8] Because we find no violation of the FLSA because both the companionship exemption and sleep time exception applies to the wages that were not paid to Ms. Sidell, Ms. Sidell's arguments concerning willful and intentional violations of the FLSA for the purposes of extending the statute of limitations for her claim and concerning liquidated damages will not be addressed.

15

Copies to:

Dean J. Arnold
NUNN LAW OFFICE
deana@kennunn.com

John Patrick Ryan Jr.
HALL RENDER KILLIAN HEATH & LYMAN
jpryan@hallrender.com

Craig Warner Wiley
HALL RENDER KILLIAN HEATH & LYMAN
cwiley@hallrender.com

Craig M. Williams
HALL RENDER KILLIAN HEATH & LYMAN
cwilliams@HallRender.com